JUAN R. RAIMUNDI MELÉNDEZ y la COMISIÓN DE SERVICIO PÚBLICO, recurridos, *v.* PRODUCTORA DE AGREGADOS, INC., peticionaria.

*Número:* CC-1997-652      *Resuelto:* 21 de junio de 2004

*Pedro E. Ortiz Álvarez, Jorge C. Pizarro García* y *Gerardo Fernández Amy*, abogados de la parte peticionaria; *Wanda I. Soler Fernández*, abogada de la parte recurrida.

EL JUEZ ASOCIADO SEÑOR REBOLLO LÓPEZ emitió la opinión del Tribunal.

El 27 de enero de 1997 el Sr. Juan R. Raimundi Meléndez presentó ante la Comisión de Servicio Público de Puerto Rico (Comisión) una querella contra la cantera Productora de Agregados Inc. (Productora).[1] En síntesis, alegó que desde el 23 de enero de 1997 Productora le ha prohibido la entrada a los terrenos de la cantera, impidiendo que éste pueda recoger la mercancía de sus clientes. En vista de ello, solicitó de la Comisión que emitiera una orden de cese y desista en contra de la querellada. Además, solicitó que se le indemnizara, a razón de $1,800 diarios, por los daños y perjuicios causados a raíz de la prohibición.

Por su parte, Productora presentó una moción de desestimación donde alegó falta de jurisdicción sobre la persona y la materia objeto del litigio. En primer lugar, alegó que nunca ha sido concesionaria de la Comisión y que nunca ha tenido relación contractual alguna con el querellante, por lo que la Comisión no tiene autoridad alguna sobre ella. En cuanto al argumento de falta de jurisdicción sobre la materia, adujo que la ley habilitadora de la Comisión no ex-

---

[1] Esta última es dueña de una cantera dedicada a la venta de agregados.

tiende el alcance de sus facultades a reglamentar la forma y manera en que una entidad privada —no concesionaria— conduce sus negocios.

Luego de varios incidentes procesales, el 7 de marzo de 1997 la Comisión emitió una resolución mediante la cual ordenó a Productora que cesara en su pretensión de negarle acceso a Raimundi a los predios de su cantera. Además, ordenó el pago de una indemnización ascendente a cuarenta y siete mil seiscientos dólares en compensación por los daños y perjuicios alegadamente sufridos. Al descartar el argumento de falta de jurisdicción levantado por Productora, la Comisión —citando lo dispuesto en el Art. 14(c) de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1101— señaló:

> La Comisión no solamente reglamenta y fiscaliza las empresas de servicio público que operen en Puerto Rico[,] sino que también interviene para resolver controversias entre dichas empresas y sus usuarios, entre concesionarios y entre concesionarios y particulares cuyas actuaciones afecten o pueda [sic] afectar las actividades bajo nuestra jurisdicción.
>
> El legislador creyó necesario[,] mediante la promulgación de la Ley 104 de 27 de julio de 1974, el Artículo 14 de la Ley de Servicio Público de Puerto Rico, para incluir bajo la jurisdicción de la Comisión a cualquier persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público, tal y como trata en el caso de autos. Petición de *certiorari*, Anejo 9, pág. 153.

Insatisfecha con la determinación de la Comisión, Productora acudió ante el Tribunal de Apelaciones mediante un recurso de revisión. En síntesis, alegó que incidió la Comisión al asumir jurisdicción sobre una materia que trasciende los poderes delegados por la Asamblea Legislativa. Adujo que ninguna disposición de la Ley de Servicio Público ni de su Reglamento autoriza a la Comisión a ordenarle a una compañía como la suya que garantice el acceso de un transportista a los predios de una cantera privada.

Mediante resolución a esos efectos, el foro apelativo in-

termedio *confirmó* el dictamen recurrido. En síntesis, y en lo aquí pertinente, resolvió que siendo la Comisión el organismo gubernamental designado para determinar quién puede dedicarse al acarreo de agregados, y para regular esta industria, es dicha entidad la única que puede impedir que uno de sus concesionarios pueda brindar el referido servicio público. Al igual que la Comisión, el tribunal apelativo intermedio fundamentó su determinación —de manera principal— en lo dispuesto en el Art. 14(c) de la Ley de Servicio Público de Puerto Rico, ante.([2])

Inconforme con la actuación del Tribunal de Apelaciones, Productora recurrió, oportunamente, ante este Tribunal —vía *certiorari*— imputándole al foro apelativo intermedio, en síntesis y en lo pertinente, haber errado al concluir que la Comisión tenía jurisdicción para resolver la querella presentada en el caso de autos.

*Expedimos* el recurso. Contando con las comparecencias de todas las partes y estando en condición de resolverlo, procedemos a hacerlo.([3])

## I

El Art. 14 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1101, enumera los poderes y las facultades generales de la Comisión. A esos efectos, la referida disposición estatutaria establece, en sus incisos (a) y (b), 27 L.P.R.A. sec. 1101(a) y (b), que la Comisión tendrá facultad para: (i) otorgar toda autorización de carácter público para cuyo otorgamiento no se haya fijado otro procedimiento de

---

([2]) Además, citó lo dispuesto en el Reglamento Núm. 1817 de la Comisión de Servicio Público de 20 de agosto de 1974, mejor conocido como Reglamento de Carga de Agregados, al referirse a la prohibición de discrimen contra porteadores públicos cubiertos por dicho reglamento.

([3]) Por su parte, la Asociación de Industriales de Puerto Rico presentó una moción para comparecer como *amicus curiae*, lo cual le fue concedido.

ley;(⁴) (ii) reglamentar las empresas de vehículos privados dedicados al comercio;(⁵) (iii) otorgar autorizaciones para el transporte público; (iv) imponer multas administrativas y otras sanciones administrativas al amparo de la Ley de Servicio Público; (v) conducir investigaciones e intervenciones; (vi) exigir cualquier clase de información que sea necesaria para el adecuado cumplimiento de sus facultades; (vii) ordenar o solicitar a los tribunales que ordenen el cese de actividades o actos al amparo de los Arts. 51 y 51-A de la ley, 27 L.P.R.A. secs. 1262(⁶) y 1262a,(⁷) o de cualquier otra disposición de la Ley de Servicio Público; (viii) imponer y ordenar el pago de costas, gastos y honorarios de abogado(⁸) y (ix) ordenar que se realice cualquier acto en cumplimiento de las disposiciones de la mencionada ley.

Por otro lado, el inciso (c) de este Art. 14 dispone que los poderes y las facultades, *enumerados en los incisos (a) y (b)*, ante, serán ejercitables no solamente en relación

---

(⁴) Incluso el derecho de usar o cruzar a nivel, sobre nivel o bajo nivel las vías públicas o cauces de aguas públicas y para reglamentar las compañías de servicio público y porteadores por contrato, incluyendo asignar los vehículos públicos que utilizarán los lugares de aparcamiento (terminales) que para los transportistas de pasajeros provean las legislaturas municipales o el Departamento de Transportación y Obras Públicas.

(⁵) Específicamente el aspecto relacionado con la seguridad de éstos.

(⁶) Esta sección provee para que la Comisión realice enmiendas, suspensiones y revocaciones de decisiones y autorizaciones previamente emitidas.

(⁷) Esta sección dispone, en su parte pertinente, que:

"(a) Cualquier funcionario o agente debidamente autorizado de la Comisión de Servicio Público podrá presentar ante cualquier juez de Tribunal de Primera Instancia de Puerto Rico una petición jurada, alegando que la compañía de servicio público o entidad actuando como compañía de servicio público a que se refiere la petición no le está dando cumplimiento a las disposiciones de esta Parte y/o de las reglas y reglamentos aprobados en virtud de las mismas o a las de cualquier ley, regla y reglamento relacionado con la protección de la vida, salud, seguridad y bienestar del público en general especificando los actos u omisiones constitucionales [sic] de dicha violación y señalando las personas responsables de los mismos. El tribunal expedirá una orden provisional dirigida a dichas personas requiriéndoles para que paralicen toda actividad bajo apercibimiento de desacato, en relación con los cuales subsisten las condiciones señaladas en la petición, hasta tanto se ventile judicialmente su derecho." 27 L.P.R.A. sec. 1262a.

(⁸) Así como el pago de gastos y honorarios por otros servicios profesionales y consultivos para las investigaciones, audiencias y procedimientos ante la Comisión.

con las compañías de servicio público, porteadores por contrato, empresas de vehículos privados dedicados al comercio, personas que se dediquen al transporte turístico y entidades que actúen como compañías de servicio público o como porteadores por contrato, sino también con respecto a:

(1) Toda persona o entidad que infrinja las disposiciones de [la Ley].

(2) Toda persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público.

(3) Toda persona o entidad que lleve a cabo cualquier actividad para la cual sea necesario obtener una autorización o endoso de la Comisión.

(4) Toda persona o entidad cuyas actuaciones u omisiones resulten en perjuicio de las actividades, recursos o intereses en relación con los cuales la Comisión tiene poderes de reglamentación, supervisión o vigilancia. 27 L.P.R.A. sec. 1101(c).

En ocasión de recomendar la aprobación del Sustitutivo del P. de la C. 1226, convertido luego en la Ley Núm. 60 de 31 de mayo de 1972, el representante Agrait Rivera Cintrón, actuando en su capacidad de Presidente de la Comisión de Gobierno de la Cámara de Representantes, señaló que uno de los propósitos de la medida era

... consagrar claramente en la ley, la facultad de la Comisión de Servicio Público para intervenir con personas, que aunque no presten servicios públicos, incurren en prácticas o actuaciones que afectan adversamente los servicios públicos.[9]

Añadió el mencionado legislador que la inclusión de estas personas a la jurisdicción de la Comisión de Servicio Público "permitir[á] a esta Agencia bregar más efectivamente *con las materias que caen bajo su jurisdicción*". (Énfasis suplido.) Informe de la Comisión de Gobierno de la Cámara de Representantes de Puerto Rico de 9 de febrero

---

[9] Informe de la Comisión de Gobierno de la Cámara de Representantes de Puerto Rico de 9 de febrero de 1972 sobre el Alcance del Sustitutivo del P. de la C. 1226, pág. 2.

de 1972 sobre el Alcance del Sustitutivo del P. de la C. 1226, pág. 4.

■ Como vemos, las facultades o poderes que puede ejercer la Comisión con relación a personas o entidades que no sean compañías de servicio público o porteadores por contrato *no son absolutos ni ilimitados.* Éstos se *circunscriben* a los enumerados en los incisos (a) y (b) del Art. 14 de la ley, ante. Esto es, la Comisión podrá asumir jurisdicción en aquellos casos en que determine que las actuaciones u omisiones de una persona o entidad privada están afectando adversamente la prestación de un servicio público, *pero sólo para ejercitar las facultades expresamente establecidas en los referidos incisos (a) y (b).*

■ En lo pertinente al asunto ante nuestra consideración, el inciso (b) de este Art. 14, ante, faculta a la Comisión para emitir ciertas órdenes en cuanto a personas o entidades privadas. *Específicamente* se autoriza a la Comisión a ordenar —o solicitar a los tribunales que ordenen— el cese de actividades o actos *al amparo de los Arts. 51 y 51-A de la Ley del Servicio Público, ante, o de cualquier otra disposición de esta ley*, y a ordenar la realización de cualquier acto *en cumplimiento de sus disposiciones.*

■ Vemos, pues, que en lo que respecta a personas o entidades privadas, la ley *no* autoriza a la Comisión a emitir cualquier tipo de orden, *sino sólo aquellas que sean necesarias para hacer cumplir las disposiciones expresamente establecidas en la propia ley.* Ello, simple y sencillamente, significa que, con relación a estas personas, *la Comisión de Servicio Público no puede emitir órdenes para hacer cumplir obligaciones que no hayan sido expresamente estatuidas en su ley habilitadora.*

■ En ese sentido, es importante señalar que *ninguna* de las disposiciones de la Ley de Servicio Público provee para que la Comisión pueda imponerle a una empresa privada la obligación de recibir en sus predios a cualquier

transportista con licencia de la Comisión. *Tampoco* existe en la ley *ni* en su reglamento *ninguna* disposición que obligue a una empresa privada a desarrollar o mantener relaciones de negocios con cualquier transportista por el solo hecho de que se trate de un porteador público autorizado.([10])

■ Resulta, pues, evidente que estamos ante un caso en que *ni* la letra *ni* el historial legislativo de la ley demuestran que la Asamblea Legislativa tenía la intención de conferirle a la Comisión un poder absoluto sobre personas o entidades privadas por el *simple hecho* de que sus actuaciones pudieran afectar la prestación de algún servicio público.([11]) En estas circunstancias, es claro que *ni* la Comisión *ni* los tribunales pueden ampliar las "facultades o poderes" que con relación a estas personas pretendió conceder la Asamblea Legislativa.

■ Resulta importante señalar que, en lo referente al asunto ante nuestra consideración, hemos establecido que en el ámbito administrativo, al igual que en el foro judicial, *no existe discreción para asumir jurisdicción donde no la hay.* Véase *Maldonado v. Pichardo,* 104 D.P.R. 778 (1976). Conforme nuestro estado de derecho, las agencias administrativas *sólo* tienen los poderes *otorgados expresamente* por su ley habilitadora y aquellos que sean *indispensables* para llevar a cabo los conferidos. *Caribe Comms., Inc. v. P.R.T.Co.,* 157 D.P.R. 203 (2002). Véanse, además: *Com. Vec. Pro-Mej., Inc. v. J.P.,* 147 D.P.R. 750, 762 esc. 24 (1999); *P.S.P. v. Com. Estatal de Elecciones,* 110 D.P.R. 400

---

([10]) En lo que respecta al argumento esgrimido por el foro apelativo intermedio en torno a lo dispuesto en el Reglamento de Carga de Agregados bástanos con señalar que la Ley de Transporte y Carga de Agregados, Ley Núm. 1 de 16 de mayo de 1972 (27 L.P.R.A. sec. 2002 *et seq.*), no contiene disposición alguna que confiera jurisdicción a la Comisión sobre entidades o empresas privadas. Es más, en su Art. 2 (27 L.P.R.A. sec. 2002), esta ley limita la jurisdicción de la Comisión a "la actividad de transportación o carga de agregados *por vías públicas* ...".

([11]) Todo lo contrario. Una simple lectura de la Ley del Servicio Público de Puerto Rico evidencia que el hecho de que se esté afectando un servicio público a lo único que da acceso es a las facultades expresamente enumeradas en el estatuto aquí en cuestión.

(1980); *Infante v. Tribl. Examinador Médicos*, 84 D.P.R. 308 (1961).

■ A tono con lo anterior, hemos precisado que una agencia administrativa *no* puede asumir jurisdicción sobre situación alguna que *no* esté autorizada por ley; es decir, *ni* la necesidad, *ni* la utilidad, *ni* la conveniencia pueden sustituir al estatuto en cuanto a fuente de poder de una agencia administrativa.[12] *Es por ello que cualquier duda en cuanto a la existencia de dicho poder debe resolverse en contra de su ejercicio.*

■ Bajo ese tenor, en *P.R. Lighterage Co. v. Caribe Tugboat Corp.*, 111 D.P.R. 686, 691–692 (1981), fuimos *enfáticos* al resolver que "[l]a Comisión de Servicio Público no puede asumir jurisdicción sobre clase alguna de actividad que no esté claramente autorizada por ley para ello". Tratándose de una criatura de la Legislatura, los actos u órdenes que trascienden lo dispuesto en su ley habilitadora no sólo son erróneos, sino también nulos.[13]

En virtud de lo antes expuesto, forzoso es concluir que en el presente caso la Ley de Servicio Público *no faculta a la Comisión a ordenar a la peticionaria, Productora de Agregados Inc., que cese en su negativa de darle acceso a Raimundi Meléndez a su cantera.* Una correcta interpretación y aplicación de nuestro ordenamiento jurídico no puede llevarnos a otra conclusión. Resolver lo contrario necesariamente implicaría la creación de una "super Comisión" que tendría la facultad de asumir jurisdicción en cuanto a cualquier tipo de empresa o persona privada con el fin de emitir órdenes de todo tipo imaginable.[14] Ello no

---

[12] Véase 64 Am. Juris. 2d Sec. 146, pág. 548.

[13] Véanse: *Caribe Comms., Inc. v. P.R.T.Co.*, 157 D.P.R. 203 (2002); *Ramos Ruiz v. E.L.A.*, 150 D.P.R. 639 (2000); *Arrow Transportation Co. v. Idaho Public Util. Com'n*, 379 P.2d 422 (D. Id. 1969); *People v. Biggs*, 84 N.E.2d 372 (D. Ill. 1949).

[14] A nuestro juicio, el error que comete el foro apelativo intermedio al resolver el presente recurso se debe principalmente a que, al analizar lo referente a la jurisdicción de la Comisión, se limita exclusivamente a evaluar el asunto de si la prohibición de acceso a la cantera afecta o no la prestación de un servicio público. Al así

sólo es contrario a nuestro ordenamiento jurídico, sino que, además, constituiría un precedente sumamente peligroso, pues en la gran mayoría de las ocasiones, la Comisión estaría adjudicando asuntos que están fuera de su jurisdicción y su "expertise".(15)

## II

Por último, debemos señalar que lo expresado en el acápite que antecede aplica, *en toda su extensión,* al asunto concerniente a la facultad de la Comisión para imponer a una *empresa o entidad privada* la obligación de compensar por daños y perjuicios. *No hemos encontrado ninguna disposición en la Ley de Servicio Público que pueda razonablemente ser interpretada en ese sentido.* Los incisos (a) y (b) del Art. 14, ante, tampoco permiten la imposición de tales daños.

Con relación a este asunto, el foro apelativo intermedio —posición erróneamente avalada por la opinión disidente— apoyó su conclusión en lo dispuesto en el Art. 20 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1107(a), el cual dispone:

> (a) Cuando la Comisión, luego de celebrada audiencia determinare que cualquiera tarifa cobrada, acto realizado u omitido, o práctica puesta en vigor ha infringido cualquier orden, fuere injusta o irrazonable, estableciere diferencias o preferencias injustificadas o indebidas o que la tarifa cobrada excede la radicada, publicada y vigente a la fecha en que se prestó el servicio, podrá ordenar a la compañía de servicio público o porteador por contrato que pague al perjudicado,

---

actuar el referido foro ignora por completo el hecho de que esta circunstancia sólo abre las puertas para que la Comisión pueda ejercitar —en cuanto a personas y entidades privadas— los poderes y las facultades dispuestos en los incisos (a) y (b) del Art. 14 (27 L.P.R.A. sec. 1101(a) y(b)).

(15) *Debe quedar claro que nuestro disenso no versa sobre la corrección o incorrección de la orden emitida, sino sobre la facultad de la Comisión de Servicio Público para emitirla. Entendemos que un asunto de este tipo, que no requiere en absoluto del conocimiento experto de la Comisión, debe ser dilucidado por los tribunales de justicia, quienes obviamente están mejor facultados para dirimirlo.*

dentro del tiempo razonable que se especifique, el importe de los daños y perjuicios sufridos como resultado de la tarifa, acto, omisión o práctica injusta, irrazonable o ilegal. La orden que a ese efecto se expida contendrá conclusiones de hechos y la cuantía que ha de pagarse.

En ocasión de interpretar la referida disposición estatutaria, en *Vera v. Pavesi*, 116 D.P.R. 55, 58 (1985), este Tribunal señaló que:

Somos del criterio que dicho precepto legal faculta a la Comisión de Servicio Público a conceder indemnización monetaria a un usuario de una compañía de servicio público, o porteador por contrato, *únicamente en aquellos casos en que éste se ve afectado o sufre daños*: 1— al ser "víctima' de una tarifa, práctica puesta en vigor, acto, u omisión que (*a*) infrinja cualquier orden de la Comisión, o (*b*) resulta injusta o irrazonable, o (*c*) establece diferencias o preferencias injustificadas o indebidas, y 2— cuando le es cobrada una tarifa que excede la radicada, publicada y vigente a la fecha en que se prestó el servicio. (Énfasis suplido y en el original, y escolio omitido.)

Asimismo, en *Quiñones v. San Rafael Estates, S.E.*, 143 D.P.R. 756, 765 (1997), señalamos que

... la Comisión de Servicio Público está expresamente facultada para ordenar *a las compañías de servicio público o a porteadores por contrato* el pago por los daños y perjuicios sufridos como resultado de una práctica irrazonable o ilegal. (Énfasis suplido.)

*Como vemos, esta disposición estatutaria provee sólo para que la Comisión pueda conceder indemnización a aquellos usuarios que se vean afectados por ciertas prácticas realizadas por los concesionarios.* Esto es, a tenor de lo establecido en esta disposición estatutaria, *la posibilidad de que la Comisión pueda adjudicar daños se produce sólo cuando la querella es dirigida contra la industria regulada.* Contrario a lo anterior, en el presente caso el foro apelativo intermedio, y la minoría, avalan un dictamen donde se conceden daños no en contra, sino a favor de la industria regulada y, *peor aún*, donde la obligación de

indemnizar se le impone a una empresa no sujeta a la regulación de la Comisión.

▆▆▆▆ Por otro lado, somos del criterio que en el presente caso tampoco procede hablar de que la concesión de daños sea un remedio "necesario y apropiado" para que la Comisión pueda efectuar los propósitos de su ley orgánica. Tampoco procede argumentar que se trata de un asunto implícitamente delegado que adelante o tenga relación directa y sustancial con los propósitos de la ley.([16]) Ello cuando consideramos *que estamos ante un patente caso de trasgresión del ámbito del poder delegado*, donde cualquier actuación por parte de la Comisión sería *ultra vires* y, por ende, nula. Cualquier interpretación en contrario constituiría un simple acto de "legislación judicial" que tendría el efecto de soslayar los más elementales principios de hermenéutica.([17])

## III

En vista de lo anteriormente expresado, forzoso resulta concluir que en el presente caso la Comisión de Servicio Público no tiene facultad en ley ni para emitir la orden de cese y desista aquí en controversia ni para imponerle a una empresa privada la obligación de indemnizar por daños y perjuicios.([18])

---

([16]) Véanse: *Caribe Comms., Inc. v. P.R.T.Co.*, ante; *Quiñones v. San Rafael Estates, S.E.*, 143 D.P.R. 756 (1997); *U.T.I.E.R. v. J.R.T.*, 99 D.P.R. 512 (1970).

([17]) Como es sabido, el Art. 14 de nuestro Código Civil, 31 L.P.R.A. sec. 14, dispone que cuando la ley es clara y libre de toda ambigüedad, la letra de ella no debe ser menospreciada. "Cuando el legislador se ha manifestado en lenguaje claro e inequívoco, el texto de la ley es la expresión por excelencia de toda intención legislativa." *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538, 545 (1996). "Interpretar una ley en forma que sea contraria a la intención del legislador implica la usurpación por la rama judicial de las prerrogativas de la rama legislativa. Por tanto, el intérprete debe abstenerse de sustituir el criterio legislativo por sus propios conceptos de lo justo, razonable y deseable." Íd.

([18]) Coincidimos con la peticionaria en cuanto a que en el presente caso podrían proceder otras reclamaciones —siempre que el derecho sustantivo así las considere— *pero éstas sólo podrían ser ejercitadas en el escenario tradicional de los tribunales de justicia.*

En mérito de lo antes expuesto, *procede revocar el dictamen emitido por el Tribunal de Apelaciones en el presente caso.*

*Se dictará sentencia de conformidad.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, con cuyos fundamentos legales están de acuerdo la Juez Presidenta Señora Naveira Merly y la Juez Asociada Señora Fiol Matta.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri.

> El derecho a un empleo, esto es, a devengar ingresos y a tener una vida justa y decente, es un principio inalienable al hombre .... *Amy v. Adm. Deporte Hípico,* 116 D.P.R. 414, 421 (1985).

En el caso de autos una mayoría del Tribunal decreta que la Comisión de Servicio Público (Comisión) carece de facultad para ordenar a un negocio de ventas de agregados que cese y desista de impedir acceso a sus predios a un porteador público autorizado por la Comisión precisamente a transportar agregados como los que vende el negocio aludido.

El referido decreto de una mayoría del Tribunal no sólo carece totalmente de base jurídica, sino que es contrario a claras normas del ordenamiento jurídico. Además, dicho decreto socava una vertiente importante del entramado del derecho administrativo en el país. Constituye también una grave injusticia contra un modesto trabajador y una decisión de privilegio a favor de una poderosa empresa privada. Por todo ello, disiento. Veamos.

# I

Conviene comenzar precisando los hechos del caso. *La mayoría del Tribunal no los narra completamente* en su decreto, sacando de foco así lo que concretamente nos concierne aquí.

La peticionaria, Productora de Agregados, Inc. (Productora) es la dueña de una cantera dedicada a la venta de agregados.[1] Juan R. Raimundi Meléndez (Raimundi) es un concesionario autorizado por la Comisión para la carga y el transporte de agregados en Puerto Rico.

Los clientes de Raimundi compraban agregados a Productora y utilizaban los servicios de Raimundi para transportar dichos agregados desde la cantera de Productora hasta sus propios predios. Raimundi había realizado las labores de transporte aludida por espacio de veinte años *y se había dedicado durante ese tiempo casi exclusivamente a transportar precisamente los agregados de Productora.* Los servicios prestados por Raimundi a Productora, pues, constituían por décadas su principal fuente de ingresos.

Desde el 23 de enero de 1997, Productora prohibió a Raimundi la entrada a su cantera por razón de alegados altercados de sus empleados con dicho porteador. *Debido a la prohibición referida, Raimundi prácticamente no había podido operar sus camiones ni realizar su negocio de transportación.* La prohibición de Productora resultó tan adversa a su modo de ganarse la vida que Raimundi llegó a considerar la idea de *vender uno de sus camiones* para poder sostener a su familia, según lo determinó la Comisión en una de las determinaciones de hecho que hizo en su Resolución en este caso. Por ello, Raimundi presentó una querella ante la Comisión, mediante la cual solicitó que se le ordenara a Productora a cesar y desistir de impedirle el

---

[1] "Agregados" incluye tierra, barro, lodo, zahorria, babote, arena, mezcla asfáltica, piedra en bruto o triturada, o cualquier otra materia análoga. Reglamento de Carga de Agregados, Reglamento Núm. 1817 de la Comisión de Servicio Público de 20 de agosto de 1974, Art. 2(b).

acceso a la cantera. También solicitó que se le indemnizara por los daños sufridos resultantes de la referida prohibición.

Productora contestó la querella y solicitó su desestimación. Adujo, en esencia, que la Comisión no tenía jurisdicción para atender la controversia referida. Planteó que la jurisdicción de la Comisión sobre el porteador público no la autorizaba a regular a quien la cantera le podía vender sus agregados. Alegó que la acción de la Comisión aquí constituía una expansión de sus poderes sobre asuntos que no le competen.

Luego de varios incidentes procesales, la Comisión se negó a desestimar la querella en cuestión y determinó que el Art. 14(c) de la Ley Núm. 109 de 28 de junio de 1962, Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1101(c), le daba jurisdicción sobre Productora. Emitió una resolución mediante la cual ordenó a la peticionaria que cesara de negar acceso a Raimundi a la cantera y ordenó el pago de una compensación por los daños sufridos por éste.

Inconforme con dicho dictamen, Productora acudió al entonces Tribunal de Circuito de Apelaciones mediante un recurso de revisión. El foro apelativo correctamente confirmó la resolución de la Comisión. Denegada la reconsideración de ese dictamen, Productora acudió ante nos. Inicialmente *denegamos el recurso de Productora por carecer de méritos. Denegamos asimismo la primera moción de reconsideración de Productora.* Sin embargo, al atender su segunda moción de reconsideración, decidimos examinar más a fondo sus planteamientos, por lo que expedimos el recurso solicitado y autorizamos la intervención de la Asociación de Industriales de Puerto Rico como *amicus curiae.*

## II

El asunto medular ante nuestra consideración es si la Comisión tiene facultad para intervenir con una cantera

que le ha negado acceso a sus predios a un porteador público autorizado por tal Comisión a transportar precisamente agregados como los que vende la cantera en cuestión.

Nótese, de entrada, que la Comisión al emitir la orden de cese y desista del caso de autos examinó de manera deliberada la cuestión de si tenía facultad para intervenir en este asunto, ya que Productora se lo planteó enfáticamente. La Comisión determinó expresamente que tenía tal facultad al amparo de lo dispuesto en el Art. 14 de la Ley de Servicio Público de Puerto Rico, 27 L.P.R.A. sec. 1101. Ello es importante en vista de la conocida doctrina de que los tribunales le deben gran deferencia y respeto a las interpretaciones que las agencias administrativas hacen de sus propias leyes orgánicas. Reiteradamente hemos resuelto que la interpretación administrativa de una ley por el organismo encargado de ponerla en vigor y velar por que sus fines se cumplan merece gran peso y deferencia judicial. *Srio. D.A.C.O. v. J. Condóminos C. Martí*, 121 D.P.R. 807 (1988); *Asoc. Médica de P.R. v. Cruz Azul*, 118 D.P.R. 669 (1987); *A.R.P.E. v. Ozores Pérez*, 116 D.P.R. 816 (1986); *Tormos & D.A.C.O. v. F.R. Technology*, 116 D.P.R. 153 (1985); *M & V Orthodontics v. Negdo. Seg. Empleo*, 115 D.P.R. 183 (1984). Este postulado básico de derecho administrativo es totalmente ignorado por la mayoría del Tribunal en el caso de autos, en su afán por defender los intereses de la empresa privada.

## III

La referida decisión de la Comisión, más aún, está firmemente anclada en lo que claramente dispone la Ley de Servicio Público de Puerto Rico, Ley Núm. 109 de 28 de junio de 1962, según enmendada, 27 L.P.R.A. sec. 1001 *et seq.* (Ley).

El Art. 14 de la Ley, *supra*, enumera los poderes y debe-

res de la Comisión. En su origen, dicho artículo aplicaba sólo a los porteadores por contrato, las compañías de servicio público y las entidades que actuasen como compañías de servicio público. Sin embargo, en *1972* se enmendó la Ley para adicionar un inciso (b) a su Art. 14, *supra*, para dejar claramente establecido, no sólo que la Comisión tenía las facultades generales que usualmente ejerce un organismo cuasi judicial, sino además que la Comisión tenía facultad para *intervenir con personas que incurriesen en prácticas o actuaciones que afectaran adversamente los servicios públicos, aunque tales personas no fuesen compañías de servicios públicos o concesionarios de la Comisión.* Informe de la Comisión de Gobierno de la Cámara de Representantes sobre el P. de la C. 1226 de 9 de febrero de 1972.

Es evidente que el legislador creyó necesario *ampliar* las facultades de la Comisión para otorgarle jurisdicción, no solamente sobre las empresas de servicio público que operan en Puerto Rico, sino también para que pudiese intervenir para resolver controversias entre tales empresas y terceros en casos en que las actuaciones de éstos pudiesen afectar las actividades de las empresas de servicio público.

Más aún, el 27 de junio de 1974 se enmendó otra vez el referido Art. 14 de la Ley, para aclarar la enmienda de 1972. En el Informe de la Cámara de Representantes sobre el *alcance* de esta nueva enmienda de 1974 se señaló lo siguiente:

> Mediante la Ley Núm. 60, de 30 de mayo de 1972, se enmendó el Artículo 14 de la Ley de Servicio Público, a los fines de conceder jurisdicción a la Comisión de Servicio Público para intervenir con personas y empresas que pudieran afectar adversamente la prestación de los servicios públicos en Puerto Rico y la eficiente implementación de dicha ley. *La enmienda se fundamentaba en el hecho de que a la Comisión ... le era indispensable no sólo tener la facultad de intervenir efectivamente con las personas que prestan servicios públicos, sino también con aquéllas que aunque no prestan un servicio incurren en prácticas y actuaciones que afectan adversamente a dichos servicios ....* (Énfasis suplido.) Informe de la Cámara de

Representantes sobre el P. del S. 724 de 31 de mayo de 1974, págs. 1–2.

Asimismo, en la Exposición de Motivos de la enmienda de 1974 se resaltó su propósito de hacer claro que al adoptar la enmienda de 1972 se le concedió autoridad a la Comisión para ejercer todas sus facultades con relación a actuaciones de personas o entidades *que no son empresas de servicio público o porteadores por contrato,* pero que afectan sus actividades. La referida exposición de motivos lee como sigue:

> A los fines de conceder jurisdicción a la Comisión de Servicio Público *para intervenir con personas y empresas que pudiesen afectar adversamente la prestación de los servicios públicos en Puerto Rico* ... con miras a aclarar que al adoptar la Ley número 60 del 30 de mayo de 1972 concedimos autoridad a la Comisión para ejercer todas sus facultades y no tan sólo las contenidas en el Inciso (b) *en relación a las personas o entidades enumeradas en dicha ley que no son empresas de servicio público o porteadores por contrato.* (Énfasis suplido.) Exposición de Motivos de la Ley Núm. 104 de 27 de junio de 1974, (Parte 1) Leyes de Puerto Rico 371.

Luego de las referidas enmiendas, el Art. 14 de la Ley dispone así, en lo pertinente aquí:

> (c) Los poderes y facultades dispuestas en los incisos (a) y (b) de esta sección *serán ejercitables no solamente en relación con las compañías de servicio público,* porteadores por contrato, empresas de vehículos privados dedicados al comercio, personas que se dediquen al transporte turístico, según se define en esta parte y entidades que actúen como compañías de servicio público o como porteadores por contrato, *sino también con respecto a*:
>
> (1) Toda persona o entidad que infrinja a las disposiciones de esta Parte.
>
> (2) *Toda persona o entidad cuyas actuaciones afecten o puedan afectar la prestación de algún servicio público.*
>
> (3) Toda persona o entidad que lleve a cabo cualquier actividad para la cual sea necesaria obtener una autorización o endoso de la Comisión.
>
> (4) *Toda persona o entidad cuyas actuaciones u omisiones resulten en perjuicio de las actividades, recursos o intereses en*

*relación con los cuales la Comisión tiene poderes de reglamentación, supervisión o vigilancia.* (Énfasis suplido.) 27 L.P.R.A. sec. 1101(c).

Como puede observarse, lo que dispone literalmente el citado Art. 14 de la Ley, después de las enmiendas de 1972 y 1974, es meridianamente claro. *No necesita interpretación alguna.* Igualmente claro es su historial legislativo. Por ello, es sencillamente incomprensible el decreto de la Mayoría en este caso, que es absolutamente contrario al mandato expreso y a la intención del legislador referente a dicho Art. 14. Reiteradamente hemos resuelto que cuando el lenguaje de una ley es claro y la intención legislativa es patente, este Tribunal está obligado a respetar la voluntad legislativa. No pueden los tribunales disponer algo que el legislador no intentó proveer, porque ello significaría invadir los poderes de la Asamblea Legislativa. *Mun. San Juan v. Banco Gub. Fomento*, 140 D.P.R. 873 (1996); *Alejandro Rivera v. E.L.A.*, 140 D.P.R. 538 (1996). Con su decreto en el caso de autos, la mayoría de este Tribunal ignora de modo prepotente no sólo la clara voluntad legislativa, sino además nuestra propia reiterada doctrina de la obligación que tenemos de respetar y acatar el mandato legislativo.

## IV

Es menester señalar, además, que existe otra pieza legislativa aplicable al caso de autos, que la mayoría no trae a colación en su decreto de autos. La transportación de agregados es objeto en Puerto Rico de una *legislación especial* que pone de manifiesto tanto la importancia particular que reviste el asunto en nuestro país, como el rol de la Comisión en esta materia. Véase la Ley de Transportación de Agregados, Ley Núm. 1 de 16 de mayo de 1972 (27 L.P.R.A. secs. 2001–2014).

En esa legislación especial se destaca, *entre otras cosas*, la jurisdicción abarcadora que se le concede a la Comisión

sobre todo lo relativo a la transportación de agregados en Puerto Rico. En particular, en esta legislación especial se le concede a la Comisión amplias facultades investigativas y plenos poderes para fijar las condiciones y los requisitos que estime necesarios o convenientes con respecto a la transportación de agregados. 27 L.P.R.A. sec. 2005.

De particular importancia es lo dispuesto en el Art. 1 de la legislación especial referida, 27 L.P.R.A. sec. 2001. Allí se establece claramente que es un objetivo primordial de dicha legislación *"garantizar: (1) la supervivencia de los dedicados al transporte de agregados como medio de vida"*, finalidad cuya consecución se le asigna expresamente a la Comisión.

Es evidente de lo anterior que esta otra legislación provee un firme fundamento adicional a la jurisdicción de la Comisión sobre el asunto del caso de autos. Demuestra claramente la voluntad legislativa con relación a la cuestión que nos atañe aquí y pone de manifiesto una vez más el craso error que comete la Mayoría del Tribunal al despojar a la Comisión de su autoridad sobre el asunto del caso de autos.

## V

Debe enfatizarse asimismo que desde hace mucho tiempo la Comisión ejerce ya sus facultades sobre terceros cuyas actuaciones u omisiones afectan o pueden afectar los servicios que la Comisión está obligada a proteger. Así pues, en el caso *Equipos de Borinquen, Inc. y Latas de Aluminio Reynolds*, QT-91-31-TC, dicha Comisión resolvió lo siguiente:

> ... la Comisión no solamente reglamenta y fiscaliza las empresas de servicio público que operen en Puerto Rico sino que también interviene para resolver controversias entre dichas empresas y sus usuarios, entre concesionarios y *entre concesionarios y particulares cuyas actuaciones afecten o puedan*

*afectar las actividades bajo nuestra jurisdicción.* (Énfasis suplido.) Alegato de la peticionaria, Anejo I, pág. 11.

En efecto, la autoridad que le ha concedido el legislador y que la Comisión ha ejercido con respecto a terceros que, sin ser entidades de servicio público, afectan con sus actos las funciones de concesionarios de la Comisión, tiene pleno sentido jurídico y está claramente justificada. Su raciocinio radica en los principios y postulados básicos del derecho administrativo. Véase *Pérez Ríos v. Hull Dobbs*, 107 D.P.R. 834 (1978). En situaciones como las del caso de autos, los porteadores públicos no tienen otro foro que pueda atender sus querellas tan adecuadamente como la Comisión. Estos porteadores públicos carecen de ordinario de recursos adecuados para la costosa litigación judicial. Ciertamente no tienen recursos comparables a los de sus adversarios corporativos. Los tribunales, a su vez, carecen de los remedios expeditos que tiene la agencia administrativa; sobre todo, carecen del *expertise* sobre las particularidades y la dinámica operacional que tienen estos porteadores públicos en el desempeño de sus labores. Por todo ello es que el foro más afín para atender todas las cuestiones relativas a estos concesionarios de la Comisión es la propia Comisión, que tiene el cuadro completo y la perspectiva más afinada para evaluar si el porteador público ha actuado debidamente o si la prestación de sus servicios ha sido indebidamente obstaculizada. El decreto de la mayoría en este caso ofuscadamente da al traste con esta realidad jurídica sobre la naturaleza y razón de ser de los organismos administrativos y, concretamente aquí, sobre la histórica Comisión y su relación con los porteadores de agregados.

## VI

En resumen, no puede haber la menor duda de que la Comisión tenía una clara facultad para intervenir en el caso de autos. Raimundi era un porteador público autori-

zado por la Comisión a transportar los agregados que vendía Productora, lo que había constituido por décadas su principal labor como concesionario de la Comisión y su medio de ganarse la vida. Al prohibirle a Raimundi la entrada a sus predios donde se producían los agregados que Raimundi transportaría, Productora en efecto anuló la concesión que la Comisión le había otorgado a Raimundi y afectó la supervivencia de este transportador de agregados. La prohibición referida era precisamente una instancia de lo que el legislador quiso poner bajo la jurisdicción de la Comisión con las enmiendas de 1972 y 1974 a la Ley, y con la ley especial sobre transportación de agregados. Además, nadie mejor que la Comisión para atender en este asunto, que atañe precisamente a su conocimiento especializado. Es por ello que el dictamen de una mayoría del Tribunal en sentido contrario aquí constituye no sólo un crudo desacato a la voluntad legislativa, sino además un acto sin ningún sentido jurídico. *La mayoría sencillamente se ha arrogado un poder que no tiene, al ignorar el claro y justificado mandato de ley, y lo utiliza para descoyuntar la autoridad de la Comisión innecesariamente.*

El decreto de la mayoría, además, tiene el efecto de dejar *desamparado* a un trabajador para favorecer los intereses de una poderosa empresa comercial. A estas alturas, la parte peticionaria no tiene ya ni un recurso judicial disponible en cuanto a los incidentes concretos del caso de autos. Una vez más, una mayoría de este Tribunal decide a favor del fuerte y en contra del más débil, haciendo gala de su insólita y enrevesada concepción de lo que es justo y poniendo la autoridad de este Foro en contra de los que más necesitan su protección.

Es por todo ello que yo DISIENTO.